## WELCH *a*. THE MAYOR, &c., OF NEW YORK.

*New York Common Pleas; Special Term, June,* 1865.

### CONTINUATION OF MECHANICS' LIENS.

Where the holder of a mechanics' lien has in good faith commenced proceedings to enforce it, an order ought always to be granted to continue such lien, so that the lienor may not be prejudiced by the lapse of the year before the litigation can be terminated.

Such order may be made *ex parte* or upon notice.

A mechanic's lien ceases after one year, unless continued by order of the court.

Motion to vacate an order to continue a mechanic's lien.

This was a proceeding to foreclose a mechanic's lien effected upon Ward School Number Eight, in the city of New York, on the 14th day of June, 1864, to which The Mayor, &c., The Board of Education, and other parties having liens, were made parties.

A notice to appear at chambers on June 26, and submit to an accounting, was served upon these parties on the 12th and 13th June; and on June 14, on proof of service thereof, and an affidavit of the plaintiff's attorney that no notice of appearance or of claim had been served upon him, and that notice of commencement of suit had been given the county clerk, an *ex parte* order was obtained (on the 14th June, 1865, the day the lien would have expired), continuing the lien, and directing the county clerk to make a new docket stating the fact.

Chas. Whitlock, the holder of the lien immediately succeeding that of the plaintiff, who had instituted proceedings to foreclose his own lien, obtained an order to show cause why the order of continuance should not be vacated.

*Geo. W. Wingate,* for the motion.—I. The order is irregular on its face, and on the face of the affidavits on which it was granted.

Proceedings have been regularly instituted to foreclose the plaintiff's lien, and all persons made parties have been served with notice. These proceedings were not commenced until the 12th inst., within two days of a year from the day of filing; and the application itself was made on the very last day allowed by law.

No reason is shown excusing the plaintiff's laches, or affording any grounds for continuing the lien. These facts constitute the strongest possible argument against a continuance of the lien.

II. An order of this description is only granted as an exercise of the equitable power of the court, and the facts alleged show conclusively that the plaintiff is not entitled to any interposition of such power on his behalf.

The only object of the provision authorizing the continuance of a lien was to allow a lienor who had used due diligence, but had been unable to institute his proceedings within the year, such time as might be necessary for that purpose. (Freeman a. Cram, 3 Comst., 309.)

That decision was based on the old lien-law; and that now in force, and under which this proceeding is instituted, was intended to be even of a more summary character, so that a lienor, unless guilty of gross laches, would have no difficulty whatever in foreclosing his lien within the year.

III. Before any such order can be made, the lienor must set forth some reason why the court should interfere in his behalf.

Admitting that the whole matter is in the entire discretion of the court as to the validity of those reasons, they cannot exercise such discretion until they are furnished with something to form a foundation for its exercise. (Skinnion a. Kelley, 18 N. Y., 355; Russell a. Conn, 20 Ib., 81.)

It never was intended that every person commencing a proceeding to foreclose a lien should be entitled as of course to an order extending his lien indefinitely. (People a. Utica Ins. Co., 15 Johns., 358, 380; Jackson a. Collins, 3 Cow., 89; People a. Draper, 15 N. Y., 352.)

IV. The fact of the plaintiff delaying till the very last moment before instituting proceedings to foreclose his lien, so far from affording a foundation for the exercise of any discretion by the court, is conclusive evidence of such laches on his part

as deprives him of any claim to have his lien extended. The fact that the moving papers show that he has regularly commenced proceedings, in itself shows that the reason for any extension of his lien is destroyed; it shows that there is no necessity for any such order to protect his rights.

Although the lien-law provides in general terms "that liens shall cease after one year" (*Laws of* 1863, 864, § 11), yet the section is to be read in connection with the preceding provisions, "that the lien shall only be satisfied on an order of the court, on due proof that one year has elapsed, and no action been commenced." (*Ib.*, § 10.)

If not so satisfied, it remains on the docket; and while there, is notice to all the world.

This is especially the case in the present instance, where notice has been served on the county clerk that the proceedings have been commenced.

The intention of the statute was clearly to follow the law of 1851, and allow liens to continue "until the determination of proceedings to foreclose them."

Even, therefore, if an affidavit had not been filed, the case would be within the reasoning of DALY, J., in Paine a. Bonny (6 *Abbotts' Pr.*, 99; S. C., 4 *E. D. Smith*, 734).

V. Admitting that the lien would not continue, the fault is entirely that of the plaintiff, who had it in his power to dispose of the whole matter within the year.

It will be recollected that he has no superior equity over any of the other lienors except what he may have obtained by superior diligence; and to maintain any such equity over them he must maintain the same diligence.

VI. The order is irregular, as it provides for an indefinite continuance of the lien.

(*a.*) The object of the lien-law is not to create a permanent encumbrance, but a temporary lien, and to make it the interest of all parties to determine the matter at the earliest possible moment, and in the most summary manner. (See cases, *supra.*)

The limitation contained in the act is a statute of repose.

Acts of this character are favored by public policy; and should be favorably construed. (Van Keuren a. Parmelee, 2 *Comst.*, 526.)

(*b.*) Such a continuance would result in removing all incentive to diligence on the part of the lienor; and the liens for all practical purposes will be perpetual,—a result directly opposed to public policy and the whole tenor of the lien-law.

(*c.*) The plaintiff having instituted proceedings, has no right under any circumstances to ask for a continuance for any longer than their determination.

This was all that was provided in the act of 1851.

VII. The order should not have been granted *ex parte.*

(*a.*) The order of continuance was really creating a new lien upon the premises for an indefinite period.

The other lienors were opposed to it.

The Mayor, &c., and the Board of Education were also opposed.

What right then has the plaintiff to an order of this description until the parties interested are afforded an opportunity of being heard?

"It is an elementary rule, that persons having an apparent right must be brought into court before the court will do any thing to affect that right." (1 *Vesey Jr.,* 29, 1789; Hallett *a.* Hallett, 2 *Paige,* 15; Isnard *a.* Cazeaux, 1 *Ib.,* 39.)

This also being "an application for an order," was a motion. (*Code,* § 401.)

And Rule 29 of Supreme Court provides that "all motions shall be brought before the court on notice of eight days, or by an order to show cause."

(*b.*) The affidavit " that no one had appeared," shows that the court supposed that there was no one to give notice to, and did not know that the time for the parties to appear had not arrived.

VIII. This being one of the cases where a number of liens (amounting to $3,088) have been filed upon the balance due from the Board of Education to the contractor ($400), it results, that as each lienor has the same right to an *ex-parte* order of continuance as the plaintiff, that the building will remain covered with liens for an indefinite period.

Welch may find his proceedings are wrong, and discontinue, and commence again indefinitely.

If the principle is established, it is easy to see the great hardship that would result to private owners of real estate.

Before, therefore, any such order could be made, all parties interested should have been notified, and afforded an opportunity of opposing, and the want of such notice makes the order void.

*Francis Tillou*, opposed.

CARDOZO, J.—Although the lien is to be discharged of record only in the manner stated in section 10, yet by section 11 it absolutely ceases after one year, unless continued by order of the court. The fact that suit has been commenced will not keep the lien alive after the expiration of one year, but can only be effected by an order pursuant to section 11. I think it not going too far to hold that when the lienor has in good faith commenced proceedings to enforce his lien, an order ought, unless under very special circumstances, always to be made to continue the lien, so that he may not be prejudiced by the lapse of the year before the limitation can be terminated. Whether the order to continue be granted *ex parte* or upon notice is not important. If the order to continue be inadvertently granted, the party prejudiced can move for relief.

I do not see any reason why the order to continue should not have been granted, and the motion to vacate it must therefore be denied; but as the statute is very obscure and the motion is made in good faith, I shall not give costs.

Motion denied, without costs.

---

PEOPLE *on rel.* SMITH *a.* RUSSEL.

*Supreme Court, First District; Special Term, June,* 1865.

JURISDICTION OF CITY JUDGE IN SUMMARY PROCEEDINGS.—
OFFICE OF THE WRIT OF PROHIBITION.

The city judge of the city of New York has jurisdiction of summary proceedings to dispossess a tenant from premises in that city.